**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 17-CR-20748-JEM-1**

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

**v.**

**CYNTHIA RODRIGUEZ,**
        **Defendant.**
_____/

## DEFENDANT RODRIGUEZ' SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE

The Defendant, CYNTHIA RODRIGUEZ, by and through undersigned counsel, respectfully submits the following Sentencing Memorandum and Request for Downward Variance.

### *INTRODUCTION*

Cynthia is a fragile 30-year-old young woman, who admits her mistakes and wrong doing.

For her involvement in the conspiracy, Cynthia was paid approximately, $15,000.00. Cynthia is now looking at being incarcerated between 8 and 9 years.

Because of the loss amount attributed to her, her total offense level is 30 with a criminal history category of I, her imprisonment range is 97–108 months. *See,* para. 110, Pre-Sentence Investigation Report ("PSI").

## *MS. RODRIGUEZ' BACKGROUND*

Cynthia was not born into a stable family. Because of her father's alcohol dependency, he had difficulty holding a job. They constantly moved throughout the United States and the Dominican Republic. Both parents were immigrants and her mother with her own infirmities had difficulty assimilating. Her mother, suffering from disabling depression and on medication, sadly could not take care of her and her younger sister. The child rearing responsibilities were left to Cynthia, to do much of the parenting of her younger sister.

From birth, Cynthia has had severe medical problems: the main vein supplying her kidneys with blood was and is damaged and blocked. She has been on the verge of organ failure several times. She was often severely ill as a child but did not get the correct diagnosis until she was in high school. Prior to getting the diagnosis, she was told it was a tumor. She grew up thinking it was a tumor that was going to kill her.

When she was 14-years old, her parents allowed a cousin, a 45-year old man to live with the family for nine months. That man sexually molested her for months and eventually raped her. She told her mother who called her a liar. She was afraid to tell her alcoholic father. Eventually, she told her friend, and the friend's mother told her father, and the man was forced to leave the household. He was never arrested, and she was never any given counseling. Young and unstable, she was left alone, to deal with her trauma.

As soon as Cynthia graduated high school, she moved to NYC, looking for a better life. Tragically, while leaving a party, she was brutally attacked and raped. Beaten, bruised and violated, she was hospitalized. Her trauma mandated that she leave New York City, so she moved to Washington, DC. There, she worked in a school for children with cerebral

palsy, downs syndrome and mental retardation. She was very proud of her work and enjoyed it.

Cynthia has had two turbulent relationships, both producing a son. As is characteristic from being brought up in a dysfunctional home, both relationships were cruel and violent. In one relationship, she was locked in a walk-in closet for days, in the other she was almost pushed off a 5th story balcony. Both relationships involved regular beatings and eventually getting a restraining order.

Like her father, Cynthia has an alcohol-abuse problem, which has caused her to put herself in problematic situations. Not only was she sexually violated in 2006 leaving a party when she was intoxicated, but she was later raped in Miami in 2008 by unidentified men.

She desperately tried to ease her pain with alcohol. Within a year, Hialeah police officers found her lying unconscious on the side of a highway near 103rd Street and 32 Avenue in Hialeah. Cynthia had not been attacked, just passed out unable to remember how she got there. (PSR, para 79).

When she was 20 she had her first son with her live-in boyfriend.

It was a high-risk pregnancy because of her kidney condition. During this time, her boyfriend would lock her in a room for a week or two at a time, with little food, water or access to the bathroom. This was in retaliation for fighting with him about his cheating.

Then she became pregnant, not knowing that another woman was carrying her boyfriend's baby. She just could not cope. Fights and hostility prevailed. She had so much trouble, that in 2 years on three occasions she had to involve the police and finally get a restraining order. The relationship was consumed with mental and physical abuse.

With no other options, she moved to back Miami and started working in a real estate office. After a couple years, she formed a relationship with another man and had a second son. This relationship was also violent. At one point, her boyfriend tried to throw her off a balcony. The aggression and cruelty had caused a miscarriage earlier.

After the baby was born, she moved out and because a single mother. She has never received a single penny from either father.

In December 2016, she ran into a cousin of her ex-boyfriend at a club. The cousin was out with a male friend and she joined them for a while to catch up on old gossip. Again, she was drinking too much. They spiked her drink, took her out to their van and raped and brutalized her. She woke in the van but didn't know where she was. She was too weak to know how to help herself. The case is still open and is being actively worked.

Apparently, during her struggle with the assaulters, she rolled over on her phone and 'pocket-dialed' a friend. The friend could tell she was being beaten and raped and called the police. The police found her through the GPS. She spent days in the hospital and physical therapy recovering. The rapists are fugitives.

After this 3rd rape, she became so depressed she could barely function. She mechanically tried to care for her two boys, but because of her trauma and depression, she would sit alone in a dark room. She almost committed suicide.

Her depression and medical appointments affected her job performance and she was fired. She was facing eviction, auto repossession and a mountain of overdue bills. She consoled herself drinking and it was

during this time, she met Roda Taher (Co-defendant), through a friend, who proposed a solution for her. You need some money, "I can help you". She knew it was illegal, but she was desperate.

By January 2017, she was unable to pay her rent.

By April 2017, she was so far behind on rent, she was about to be evicted.

It was in April 2017, she met Gus who told her how she could make some money.  Desperate, needing the money, she became more involved in the conspiracy.

She understands she has had terrible judgement. This by no means negates her involvement in the conspiracy, she was vulnerable.

Now, she is scrambling to find a safe home for her two young boys, while she is in jail.

## *FACTORS WARRANTING VARIANCE*

This Court is aware of the evolution of sentencing jurisprudence in the wake of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). The Supreme Court has determined that the Guidelines are no longer presumed to be reasonable. Gall v. United States, 552 U.S. 38, 128 S.Ct. 586 (2007); Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558 (2007). As such, district courts now have broad discretion in fashioning individualized sentences outside the advisory guideline ranges, with emphasis on the sentencing factors enumerated in 18 U.S.C. § 3553(a). No longer is a district court required to make a finding of "extraordinary circumstances" when imposing a sentence outside the guideline range. Gall, 128 S.Ct., at 595. The relevant § 3553(a) factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; and the need to avoid

unwarranted sentencing disparities.

As evidence of her character, although she is a single mother, has worked full-time and has little money, she has managed to achieve junior status at St Thomas University in business administration and take care of her boys.

Because of her extremely unusual and exigent circumstances, a variance from the advisory guidelines would be reasonable and appropriate,

## CONCLUSION

Cynthia deeply regrets the actions that have brought her before your honor and accepts full responsibility for her actions.

For the reasons set forth above, she respectfully requests that this Court, considering the relevant sentencing factors of 18 U.S.C. §3553(a), impose a downward variance from the U.S. Sentencing Guidelines.

I HEREBY CERTIFY that a true and correct copy of the foregoing will be provided to all counsel of record via the Court's CM/ECF system.

Respectfully submitted,
_____/s/_____
HUGO A. RODRIGUEZ
*Counsel for Cynthia Rodriguez*
5845 Collins Ave, Ste: 506
Miami Beach, Fl. 33140
Tel: 305. 373-1200
E-Mail: hugolaw@aol.com